# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JENNIFER TORRES, Individually and on Behalf of All Others Similarly Situated, | Case No.: 17-cv-1737 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| NORTHLAND GROUP, INC., ABSOLUTE RESOLUTIONS CORPORATION and ABSOLUTE RESOLUTIONS V LLC, | **Jury Trial Demanded** |
| Defendants. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Jennifer Torres is an individual who resides in the Eastern District of Wisconsin (Milwaukee County). Her former name is Jennifer Krueger.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction.

6. Defendant Northland Group, Inc., ("Northland") is a foreign corporation with its principal place of business located at 7831 Glenroy Rd., Suite 250, Edina, Minnesota 55439.

7. Northland is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Northland is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Northland is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant Absolute Resolutions Corporation ("ARC") is a foreign corporation with its principal place of business located at 1455 Frazee Road, Suite 550, San Diego, California 92108.

11. Upon information and belief, the entities named "Absolute Resolutions V, LLC" ("ARV") and "Absolute Resolutions Investments, LLC" ("ARI") are wholly owned subsidiaries of ARC. Upon information and belief, their principal offices are also located at 1455 Frazee Road, Suite 550, San Diego, California 92108. Hereafter, all three entities will be referred to collectively as "Absolute Resolutions."

12. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

13. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6)

(emphasis added); see *Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

14. The primary purpose of Absolute Resolutions' business, and Absolute Resolutions' principal purpose, is the collection of consumer debts. Absolute Resolutions' website states:

## Receivables Management Solutions

Founded in 2001, Absolute Resolutions Corporation (ARC) is a receivables management firm exclusively focused on acquiring debt portfolios directly from creditors as a part of the debt recovery lifecycle.

https://absoluteresolutions.com/receivables/.

15. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

16. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

17. Absolute Resolutions is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card accounts. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

18. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

19. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

20. Absolute Resolutions uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

21. A company meeting the definition of a "debt collector" (here, Absolute Resolutions) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

22. Absolute Resolutions is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

4

# FACTS

## *January 11, 2017 Letter*

23.     On or about January 11, 2017, Northland mailed a debt collection letter to Plaintiff regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

24.     Upon information and belief, Exhibit A is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

25.     Upon information and belief, Exhibit A is a form debt collection letter, used by Defendants Northland and Absolute Resolutions to attempt to collect alleged debts.

26.     Upon information belief, Exhibit A was the first written communication that Northland mailed to Plaintiff regarding this alleged debt.

27.     Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send within five days of the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

28.     Exhibit A contains the following:

> ACCOUNT INFORMATION
> Original Creditor: HSBC CARD SERVICES INC
> Current Creditor: ABSOLUTE RESOLUTIONS CORP.
> Regarding: HSBC CARD SERVICES INC
> Original Account #: ************2898

Exhibit A.

29.     Exhibit A identifies three different entities as the creditor. These representations are false and misleading.

5

30. Exhibit A states that the "Current Creditor" of the debt is "ABSOLUTE RESOLUTIONS CORP." and that the "Original Creditor" was "HSBC CARD SERVICES INC" ("HSBC").

31. The body of Exhibit A contains the following:

> The above referenced account has been placed with Northland Group, Inc. for collection. HSBC CARD SERVICES INC is willing to reduce your balance by offering you a settlement. We are not obligated to renew this offer. Upon receipt and clearance of $158.34, a letter will be sent confirming the above referenced account has been resolved. This offer does not affect your rights set forth below.

Exhibit A.

32. Exhibit A states that HSBC "is willing to reduce your balance by offering you a settlement." Exhibit A.

33. Exhibit A states that HSBC is the creditor.

34. Both of the above statements about HSBC are false. HSBC sold its portfolio of credit cards to Capital One in 2011. https://www.theguardian.com/business/2011/aug/10/hsbc-sells-us-credit-card-business-to-capitalone. HSBC has had no interest in Plaintiff's account or any U.S. consumer credit card accounts since 2011. HSBC certainly has no authority to reduce Plaintiff's balance or offer a settlement.

35. Exhibit A also contains the following:

> Please be aware that if the amount of principal debt forgiven as a result of settlement is equal to or greater than $600.00, Razor Capital may be required by Internal Revenue Code Section 6050P to issue a form 1099c. If you have any questions regarding your personal taxes, it is recommended you consult with a certified public accountant or other tax professional.

Exhibit A.

36. Exhibit A states that, "if the amount of principal debt forgiven as a result of settlement is equal to or greater than $600.00, Razor Capital may be required by Internal Revenue Code Section 6050P to issue a form 1099c."

37. Exhibit A states that tax law may require "Razor Capital" to issue a form 1099c if the debt is settled for less than the total amount owed.

38. Exhibit A states that "Razor Capital" is the creditor.

39. Because the settlement offer in Exhibit A was made pursuant to Northland's "authority" from HSBC, if the consumer tendered the settlement amount, Absolute Resolutions may not be bound by the settlement, in which case it could continue to attempt to collect the remaining balance of the account.

40. Additionally, the voluntary payment doctrine may bar the consumer from recovering the amounts that were paid to Northland to "settle" the account.

41. Moreover, Exhibit A states that HSBC was the "Original Creditor" of this account. This statement is misleading. Capital One is the original creditor, as it purchased HSBC's consumer credit card portfolio in 2011.

42. In Wisconsin, the statute of limitations on open accounts, including credit cards, is six years. Wis. Stat. § 893.43.

43. Upon information and belief, the alleged debt Northland and Absolute Resolutions were attempting to collect is time-barred.

*February 14, 2017 Letter*

44. On or about February 14, 2017, Northland mailed a debt collection letter to Plaintiff regarding this same alleged debt. A copy of this letter is attached to this complaint as Exhibit B.

45. Upon information and belief, Exhibit B is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

46. Upon information and belief, Exhibit B is a form debt collection letter, used by Defendants Northland and Absolute Resolutions to attempt to collect alleged debts.

7

47. <u>Exhibit B</u> contains the following:

> **ACCOUNT INFORMATION**
> **Original Creditor:** HSBC CARD SERVICES INC
> **Current Creditor:** Absolute Resolutions Corporation
> **Regarding:** HSBC CARD SERVICES INC
> **Original Account #:** ************2898
> **PAYMENT ADDRESS:**
> P.O. Box 390846, Minneapolis, MN 55439
> **NORTHLAND REFERENCE NUMBER**
> ▉0144
> **CURRENT BALANCE DUE:** $452.44
> **Settlement Offer:** $158.34

<u>Exhibit B</u>.

48. <u>Exhibit B</u> states that the "Current Creditor" of the debt is "Absolute Resolutions Corporation" and that the "Original Creditor" of the debt was HSBC. <u>Exhibit B</u>.

49. <u>Exhibit B</u> also contains the following:

> In view of tax season, our client, HSBC CARD SERVICES INC, will allow you to settle your account for $158.34 in 3 payments starting on 03/07/17. If you need additional time to respond to this offer, please contact us. We are not obligated to renew this offer. The payments can be no more than 30 days apart. Once all three payments have been paid to our office on time, a letter will be sent confirming the above referenced account has been resolved. Please send in the payments along with a payment stub to the address below.

<u>Exhibit B</u>.

50. <u>Exhibit B</u> states that "our client, HSBC CARD SERVICES INC. will allow you to settle your account . . . ." <u>Exhibit B</u>.

51. <u>Exhibit B</u> states that HSBC has authority to settle the debt.

52. <u>Exhibit B</u> states that HSBC is Northland's "client."

53. <u>Exhibit B</u> states that HSBC is the creditor.

54. <u>Exhibit B</u> also contains the following:

> Please be aware that if the amount of principal debt forgiven as a result of settlement is equal to or greater than $600.00, Razor Capital may be required by Internal Revenue Code Section 6050P to issue a form 1099c. If you have any questions regarding your personal taxes, it is recommended you consult with a certified public accountant or other tax professional.

<u>Exhibit B</u>.

55. Exhibit B states that, "if the amount of principal debt forgiven as a result of settlement is equal to or greater than $600.00, Razor Capital may be required by Internal Revenue Code Section 6050P to issue a form 1099c."

56. Exhibit B states that tax law may require "Razor Capital" to issue a form 1099c if the debt is settled for less than the total amount owed.

57. Exhibit B also contains a payment remittance slip that includes "payment stubs."

58. Exhibit B's payment stubs include the following:



Exhibit B.

59. Exhibit B's payment stubs identify the "Client Code" as "RAZR."

60. Exhibit B states that "RAZR" is the Northland's client.

61. Exhibit B states that Razor Capital is the creditor.

62. Like Exhibit A, Exhibit B identifies HSBC, Absolute Resolutions and Razor Capital" as the creditor. That representation is clearly false. Only one of the above or none are the current creditor.

63. Because the settlement offer in Exhibit B was made pursuant to Northland's "authority" from HSBC, if the consumer tendered the settlement amount, Absolute Resolutions may not be bound by the settlement, in which case it could continue to attempt to collect the remaining balance of the account.

9

64. Additionally, the voluntary payment doctrine may bar the consumer from recovering the amounts that were paid to Northland to "settle" the account.

*March 16, 2017 Letter*

65. On or about March 16, 2017, Northland mailed a debt collection letter to Plaintiff regarding this same alleged debt. A copy of this letter is attached to this complaint as Exhibit C.

66. Upon information and belief, Exhibit C is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

67. Upon information and belief, Exhibit C is a form debt collection letter, used by Defendants Northland and Absolute Resolutions to attempt to collect alleged debts.

68. Exhibit C contains the following:

> **ACCOUNT INFORMATION**
> Original Creditor: **HSBC CARD SERVICES INC**
> Current Creditor: **Absolute Resolutions Corporation**
> Regarding: **HSBC CARD SERVICES INC**
> Original Account #: ************2898
> Current Balance Due: **$452.44**

Exhibit C.

69. Exhibit C states that the "Current Creditor" of the debt is "Absolute Resolutions Corporation" and that the "Original Creditor" of the debt was HSBC. Exhibit C.

70. Exhibit C also contains the following:

> **Option I:** HSBC CARD SERVICES INC will allow you to settle your account for $158.34 in 3 payments starting on 04/06/17. If you need additional time to respond to this offer, please contact us. We are not obligated to renew this offer. The payments can be no more than 30 days apart. Upon receipt and clearance of all three payments of $52.78, a letter will be sent confirming the above referenced account has been resolved.
>
> **Option II:** HSBC CARD SERVICES INC will allow you to settle your account for $180.96 in 6 payments starting on 04/06/17. If you need additional time to respond to this offer, please contact us. We are not obligated to renew this offer. The payments can be no more than 30 days apart. Upon receipt and clearance of all 6 payments of $30.16, a letter will be sent confirming the above referenced account has been resolved.

Exhibit C.

71. Exhibit C states that HSBC "will allow you to settle your account . . . ." Exhibit C.

72. Exhibit C states that HSBC has authority to settle the debt.

73. Exhibit C states that HSBC is the creditor.

74. Exhibit C also contains the following:

> Please be aware that if the amount of principal debt forgiven as a result of settlement is equal to or greater than $600.00, Razor Capital may be required by Internal Revenue Code Section 6050P to issue a form 1099c. If you have any questions regarding your personal taxes, it is recommended you consult with a certified public accountant or other tax professional.

Exhibit C.

75. Exhibit C states that, "if the amount of principal debt forgiven as a result of settlement is equal to or greater than $600.00, Razor Capital may be required by Internal Revenue Code Section 6050P to issue a form 1099c."

76. Exhibit C states that tax law may require "Razor Capital" to issue a form 1099c if the debt is settled for less than the total amount owed.

77. Exhibit C states that Razor Capital is the creditor.

78. Like Exhibits A and B, Exhibit C identifies HSBC, Absolute Resolutions and Razor Capital" as the creditor. That representation is clearly false. Only one of the above or none are the current creditor.

79. Because the settlement offer in Exhibit C was made pursuant to Northland's "authority" from HSBC, if the consumer tendered the settlement amount, Absolute Resolutions may not be bound by the settlement, in which case it could continue to attempt to collect the remaining balance of the account.

80. Additionally, the voluntary payment doctrine may bar the consumer from recovering the amounts that were paid to Northland to "settle" the account.

81. Moreover, Exhibits A, B, and C state that HSBC was the "Original Creditor" of this account.

11

82. HSBC sold its portfolio of credit cards to Capital One in 2011. https://www.theguardian.com/business/2011/aug/10/hsbc-sells-us-credit-card-business-to-capitalone.

83. In Wisconsin, the statute of limitations on open accounts, including credit cards, is six years. Wis. Stat. § 893.43.

84. Upon information and belief, the alleged debt Northland and Absolute Resolutions were attempting to collect is time-barred.

*The FDCPA*

85. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No.

12

16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

86. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

87. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

13

Case 2:17-cv-01737-JPS    Filed 12/13/17    Page 13 of 19    Document 1

16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

86. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

87. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

88. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

89. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

90. 15 U.S.C. § 1692f generally prohibits any "unfair or unconscionable means to collect or attempt to collect a debt."

91. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

92. 15 U.S.C. § 1692g states, in part:

> a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (2) the name of the creditor to whom the debt is owed;

93. The Seventh Circuit has held that a debt collector must state the required disclosures in a non-confusing manner. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).

94. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims

14

under § 1692g(a)(2) are the same. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016):

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

### *The WCA*

95. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

96. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

97. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

98. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

99. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See*

Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

100. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

101. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

102. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

103. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

104. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I -- FDCPA

105. Count I is brought against all Defendants.

106. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

16

107. <u>Exhibits A, B, and C</u> identify three different entities as the "creditor" of the account.

108. <u>Exhibits A, B, and C</u> contain false, deceptive, misleading, and confusing statements about the identity of the creditor of the debt.

109. Defendants violated 15 U.S.C. §§1692e, 1692e, 1692e(10), and 1692g(a)(2).

## COUNT II -- FDCPA

110. Count II is brought against all Defendants.

111. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

112. <u>Exhibits A, B, and C</u> contain false, deceptive, misleading, and confusing settlement offers.

113. <u>Exhibits A, B, and C</u> purport to make settlement offers on behalf of a creditor who no longer owns the debt, in which case, the current creditor may not be bound by the settlement offer.

114. <u>Exhibits A, B, and C</u> purport to make settlement offers on a debt that is, upon information and belief, time-barred.

115. Defendants violated 15 U.S.C. §§1692e, 1692e, 1692e(10), 1692f, and 1692f(1).

## COUNT III -- WCA

116. Count III is brought against all Defendants.

117. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

118. <u>Exhibits A, B, and C</u> contained false, deceptive, misleading, and confusing statements about the identity of the creditor of the debt.

119. <u>Exhibits A, B, and C</u> purport to make settlement offers on behalf of a creditor who no longer owns the debt, in which case, the current creditor may not be bound by the settlement offer.

120. <u>Exhibits A, B, and C</u> purport to make settlement offers on a debt that is, upon information and belief, time-barred.

121. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## **CLASS ALLEGATIONS**

122. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibits A, B, and C</u> to the Complaint in this action, (c) between December 13, 2016 and December 13, 2017, inclusive, (d) that was not returned by the postal service.

123. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

124. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants violated the FDCPA and the WCA.

125. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

126. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

127. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

128. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: December 13, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com